UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAL SINGH,

Petitioner,

v.

WARDEN, NORTHWEST ICE PROCESSING CENTER, et al.,

Respondents.

CASE NO. 2:26-cv-03679-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Lal Singh's Amended Petition for Writ of Habeas Corpus. Dkt. No. 2. Respondents[1] are Bruce Scott, Warden of Northwest ICE Processing Center ("NWIPC"); David J. Venturella, Senior Official Performing the Duties of Director of United States Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); and Todd Blanche, Attorney General of the United States. *Id.* ¶¶ 9–12. Having reviewed the amended petition, Respondents'

[1] As used in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

Return (Dkt. No. 4), Petitioner's Traverse (Dkt. No. 8), and the relevant record, the Court GRANTS the amended petition.

## I. BACKGROUND[2]

Petitioner Lal Singh is a native of India who entered the United States without permission on or about August 17, 2025, "at the Texas border." Dkt. No. 2 ¶ 5. On August 19, 2025, Border Patrol apprehended Petitioner "near McAllen, Texas." *Id.* Following his arrest, Petitioner requested asylum protection and was detained at various facilities in Texas before his ultimate transfer to NWIPC in Tacoma, Washington. *Id.*; *see* Dkt. No. 5 (Hubbard Decl.) ¶¶ 10–12, 26–27.

On April 17, 2026, Petitioner appeared before an immigration judge ("IJ"). Dkt. No. 5 ¶ 23. At Petitioner's hearing, the IJ denied Petitioner's application for asylum and ordered Petitioner's removal to India. *See id.* On April 30, 2026, Petitioner filed an administrative appeal of the IJ's decision. *Id.* ¶ 24.

On September 29, 2026, Petitioner filed a petition for writ of habeas corpus. Dkt. No. 1. The next day, Petitioner filed an amended petition. Dkt. No. 2.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.2d 628, 638 (9th Cir. 2004)—that is, they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 § U.S.C. 2241(c).

---

[2] Many of the facts recounted here are based on hearsay contained within narrative portions of documents from Petitioner's immigration record, or on the declaration of Deportation Officer Christopher Hubbard, who does not claim to have firsthand personal knowledge of most of the facts therein (*see* Dkt. No. 5 (Hubbard Decl.) ¶ 2). The Court makes no findings as to whether these are true and correct statements of fact.

## III. Discussion

### A. Authority for Petitioner's Detention

Petitioner asserts that he is detained pursuant to 8 U.S.C. § 1226(a), which provides for discretionary detention of noncitizens. Dkt. No. 2 ¶ 15. Respondents argue that Petitioner is detained under 8 U.S.C. § 1225(b), which provides for mandatory detention. Dkt. No. 4 at 2–3. The Court agrees with Respondents. "Section 1225(b)(2)(A) . . . is best construed as applying to [noncitizens] entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable [noncitizens] present in the interior of the United States." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026). Here, Petitioner was apprehended two days after he crossed the United States–Mexico border, near Welasco, Texas. *See* Dkt. No. 6-1 (Petitioner Form I-213) at 3–4. Respondents assert that Petitioner was apprehended less than 100 miles from the border (*see* Dkt. No. 4 at 2), and Petitioner does not rebut the assertion (*see* Dkt. No. 8). Generally, where a noncitizen is encountered and apprehended "within 14 days of entry and within 100 miles of the physical border," *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 n.2 (2020), they are subject to mandatory detention under Section 1225, not discretionary detention under Section 1226. *See, e.g.*, *Sadat v. Scott*, No. C26-2918, 2026 WL 2731575, at *2 (W.D. Wash. Sept. 16, 2026) (applying Section 1225 to petitioner's detention, where petitioner "was apprehended near Lukeville, Arizona, a town on the Mexico-United States border, on the date of his entry."). Therefore, the Court concludes that Petitioner's detention is governed by Section 1225, not Section 1226.

By statute, noncitizens subject to Section 1225(b) must be detained "throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). But this does not end the Court's inquiry. A

noncitizen detained under Section 1225(b) may still be granted habeas relief in this District if their detention without an individualized custody determination becomes unreasonably prolonged. *See, e.g.*, *Singh v. Scott*, No. C26-3278, 2026 WL 3319507, at *2 (W.D. Wash. Nov. 3, 2026); *Singh v. Warden*, No. C26-3923, 2026 WL 3320003, at *1–2 (W.D. Wash. Nov. 3, 2026). Both Parties correctly identify the multifactor test articulated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), as the inquiry that courts in this District utilize to determine whether detention under Section 1225(b) has become unreasonably prolonged. Dkt. No. 2 ¶ 16; Dkt. No. 4 at 7.

**B. The *Banda* Factors**

The six *Banda* factors courts consider are::

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). This Court reviews them in turn.

**1. Total Length of Detention**

The length of detention is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. C22-303, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (Oct. 31, 2022). "Detention that has lasted longer than six months is more likely to be 'unreasonable,' and contrary to due

process, than detention of less than six months." *Duran v. ICE Field Office Dir.*, No. C26-1824, 2026 WL 2225424, at *3 (W.D. Wash. Aug. 3, 2026) (citation modified); *see Haidari v. Scott*, No. C26-1146, 2026 WL 1194634, at *2 (W.D. Wash. May 1, 2026) (first *Banda* factor favors petitioner after detention passes six-month threshold).

As of the date of this Order, Petitioner has been detained for approximately 15 months—since mid-August 2025. *See* Dkt. No. 2 ¶ 17. The Court recognizes that 15 months is a significant amount of time for an individual "who has never been found to pose a danger to the community or to be likely to flee" to be detained. *Jamal A.*, 358 F. Supp. 3d at 859. Respondents concede that this factor points toward a bond hearing (*see* Dkt. No. 4 at 7–8), and the Court agrees.

**2. Likely Duration of Future Detention**

The second factor for the Court to consider is the likely duration of future detention. *Banda*, 385 F. Supp. 3d at 1118. Here, Respondents contend that "[t]he likely duration of future detention weighs in favor of Federal Respondents." Dkt. No. 4 at 8. Respondents' position is that the only thing that stands between Petitioner and the end of his detention is for the BIA to rule on Petitioner's pending administrative appeal. *See id.* But the fact that there is but "only [one] remaining step" takes no account of how long that step might take. After all, it would be accurate (yet not particularly insightful) to posit, on the first day of class, that "the only remaining step" between an aspiring attorney and their law degree is "attending law school." That is to say, details matter, especially when someone's liberty is at stake.

Respondents argue that "the mere existence of an appeal [does not] establish[] indefinite future detention." *Id.* But this is a strawman. Petitioner refers to a "lengthy appeal process" (Dkt. No. 2 ¶ 18), not an "indefinite" one, and the inquiry here is not into the mere possibility of identifying an end date. Rather, it is an assessment of how far into the future that end date might

be. The *Banda* court itself noted that the process Petitioner is currently engaged in—appealing an IJ's ruling to the BIA, then possibly appealing to the Ninth Circuit if the BIA affirms—can "take up to two years or longer." *Banda*, 385 F. Supp. 3d at 1119. And Respondents give no suggestion or argument that the instant case will be quicker to resolve than the case in *Banda*. Therefore, like the *Banda* court, this Court finds this factor favors a bond hearing.

**3. Conditions of Detention**

Next, the Court considers the third *Banda* factor—the conditions of detention. 385 F. Supp. 3d at 1118. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that he or she is entitled to a bond hearing." *Diaz Reyes v. Wolf*, No. C20-0377, 2020 WL 6820903, at *6 (W.D. Wash. Aug. 7, 2020) (citation modified) (quoting *Jamal A.*, 358 F. Supp. at 860), *report and recommendation adopted as modified*, 2020 WL 6820822 (Nov. 20, 2020), *aff'd sub nom. Diaz Reyes v. Mayorkas*, No. 21-35142, 2021 WL 3082403 (9th Cir. July 21, 2021). "[C]ourts within this district have characterized the conditions in NWIPC as that of a prison, including problems with food, medical neglect, and cleanliness." *Shevchuk v. Scott*, 2026 WL 1413609, at *2 (W.D. Wash. May 20, 2026); *see also Hossain v. Scott*, 2026 WL 1533003, at *6 (W.D. Wash. June 1, 2026) (collecting cases on NWIPC conditions). As to medical neglect, Petitioner asserts that he "is experiencing depression as a result of prolonged detention and is suffering from kidney stones, which are not being adequately addressed in detention." Dkt. No. 2 ¶ 19. Respondents argue that "[t]he conditions of detention at NWIPC are not shown to be unusually punitive or to convert civil detention into punishment," because "Petitioner has not submitted any evidence describing the conditions of confinement at the facility." Dkt. No. 4 at 8. But the Court reminds Respondents that neither depression nor renal calculus is particularly pleasant to suffer through. Petitioner's specific allegations of deteriorating mental and physical health are more persuasive

than Respondents' legalistic sophistry, and the Court will not disregard the reality that "Courts in this District have routinely found that this factor favors petitioners detained at NWIPC." *Velasquez-Contreras v. Mullin*, No. C26-1250, 2026 WL 1533007, at *4 (W.D. Wash. June 1, 2026) (collecting cases). This factor weighs in favor of a bond hearing.

**4. Delays in Removal Proceedings**

Under the fourth and fifth *Banda* factors, the Court considers delays in the removal proceedings caused by the Petitioner or by the Government, respectively. 385 F. Supp. 3d at 1118. Here, both Parties agree that these factors are neutral. *See* Dkt. No. 4 at 9; Dkt. No. 8 at 4. The Court concludes likewise.

**5. Likelihood That Proceedings Will Result in a Final Order of Removal**

Under the sixth *Banda* factor, the Court considers "the likelihood that removal proceedings will culminate in a final order of removal." 385 F. Supp. 3d at 1120 (quoting *Jamal A.*, 358 F. Supp. 3d at 860). "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Id.*

Here, Petitioner has not provided the basis for his appeal, nor any argument about why the IJ erred in their decision to order him removed. *See generally* Dkt. Nos. 2, 8. For their part, Respondents characterize Petitioner's administrative appeal as "not identify[ing] any legal error in the immigration judge's decision" and, "[i]nstead, . . . stat[ing] only that Petitioner is not satisfied with the decision." Dkt. No. 4 at 10. Respondents reason that "[a]n appeal that asserts no specific legal error provides less reason to doubt that the immigration judge's order will be affirmed." *Id.* Petitioner points out that Respondents' conclusion is based only on Petitioner's Notice of Appeal, not the briefing that is before the BIA, and that the Court therefore "has no information about what legal arguments were raised in appeal briefing from either party." Dkt. No. 8 at 4. "At a minimum," Petitioner argues, "this factor should be neutral." *Id.*

The Court agrees with Respondents. On his Notice of Appeal, Petitioner stated the basis for his appeal as "[Petitioner] is not satisfied with the decision given by the immigration judge (IJ) in this case." Dkt. No. 6-4 (Notice of Appeal) at 3. The instructions on Petitioner's Notice of Appeal warned Petitioner, however, that "[y]ou must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing." *Id.* Although Petitioner is correct that the Court cannot draw any conclusions about the briefing before the BIA, the instructions in the Notice of Appeal make clear that the grounds for appeal that an appellant provides in the Notice are nonetheless part of the record that the BIA considers when adjudicating the appeal. And in this regard, Respondents are correct that "Petitioner's appeal does not identify any legal error in the immigration judge's decision." Dkt. No. 4 at 10. Moreover, the Notice of Appeal represents a threshold barrier to surmount when appealing an IJ's decision. That is, as provided in the Notice, an appeal may be "summarily dismiss[ed]" based entirely on what information an appellant includes with the Notice itself. Dkt. No. 6-4 at 3. Accordingly, the paltriness of the argument that Petitioner presented therein is sufficient to tip this factor away from a bond hearing.

* * *

Having considered the *Banda* factors, the Court finds that three weigh in favor of granting a bond hearing (including the first factor, which is the most important factor), two are neutral, and one weighs against granting a bond hearing. Under such circumstances, the Court finds that the *Banda* factors compel a conclusion that Petitioner's detention is unlawful and that he is therefore entitled to habeas relief. *See, e.g., Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *9 (W.D. Wash. Aug. 7, 2025) (ordering bond hearing when two factors favored petitioner, four factors were neutral, and no factors favored respondents); *Rahman v. Garland*,

No. C24-2132, 2025 WL 1920341, at *5 (W.D. Wash. June 26, 2025) (ordering bond hearing when four factors favored petitioner, one factor was neutral, and one factor favored respondents); *Hong v. Mayorkas*, No. C20-1784, 2022 WL 1078627, at *7 (W.D. Wash. Apr. 11, 2022) (ordering bond hearing when four factors favor petitioner, two factors were neutral, and no factors favored respondents).

### C. Appropriate Relief

Having found that Petitioner's prolonged detention without a bond hearing has become unreasonable, the Court will now address his requests for relief. Petitioner asks the Court to order his immediate release or, alternatively, to order the Government to provide him with a bond hearing. Dkt. No. 2 at 8. A bond hearing at which the Government bears the burden of demonstrating by clear and convincing evidence that Petitioner is either a flight risk or a danger is the relief commonly ordered in this District to habeas petitioners who prevail under *Banda*. *See, e.g.*, *Cardozo*, 2025 WL 2592275, at *3 (ordering bond hearing within 14 days "that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)"); *Maliwat*, 2025 WL 2256711, at *10 (same). In lieu of a hearing, the Government may comply with this order by releasing Petitioner.

## IV. CONCLUSION

According, it is hereby ORDERED:

(1) The Amended Petition for a Writ of Habeas Corpus (Dkt. No. 2) is GRANTED.

(2) Within **fourteen (14) days** of this Order, Respondents SHALL either release Petitioner or provide him with a bond hearing before an immigration judge, unless Petitioner requests more time to prepare for the hearing. At the hearing, Respondents SHALL bear the burden of proving by clear and convincing evidence

that Petitioner is a danger to the community or a flight risk. Respondents SHALL ensure that the hearing is recorded.

(3) Within **fifteen (15) days** of this Order, Respondents SHALL file a Status Report with the Court either confirming that Petitioner received a bond hearing—and informing the Court of the results of the hearing—or confirming Petitioner's release or request for a continuance.

(4) Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 13th day of November, 2026.

Tana Lin
United States District Judge